IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| 5431-33 S. Wabash LLC, | ) | No. 18-12463 |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | Judge Janet S. Baer |

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| 5437 S. Wabash LLC, | ) | No. 18-12476 |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | Judge Janet S. Baer |

**NEWLINE HOLDINGS LLC'S BRIEF IN SUPPORT OF FURTHER RELIEF REQUESTED IN BOTH BANKRUTPCY CASES**

Newline Holdings LLC ("Newline"), creditor, by and through their attorney, Paul M. Bach of Bach Law Offices, Inc., and providing a Brief in Support of Further Relief in both Bankruptcy Cases that is requested by Newline and states as follows:

**Introduction**

On April 25, 2019, Temporary Restraining Orders (Docket 184 in 18-12463 and Docket 174 in 18-12476) ("the TRO Orders") were entered by the Court in both cases captioned above which (1) granted a temporary restraining order in both Bankruptcy Cases that will expire on May 9, 2019; (2) authorized Newline to change all locks and access points for the real estate commonly known as 5431-

1

33 S. Wabash, Chicago, Illinois and 5437 S. Wabash, Chicago, Illinois ("the Real Estate") (3) allowed Newline to enter the Real Estate for the sole purpose of conducting an inspection; (4) allowed Newline to enter the Real Estate for the sole purpose of conducting an inspection; (5) directed the Debtor to provide proof of insurance for the Real Estate; (5) found that Newline has a insurable interest in the Real Estate and authorized Newline to obtain property insurance therefor; (6) directed the Debtor to collect in one location all fixtures removed from the Real Estate; (7) Ordered the Debtor not to sell or otherwise transfer or move any such fixtures without further order of the Court; and (8) continued the hearing to May 8, 2019 at 10:00 a.m. in both cases.

As stated in the Status Report of Newline in detail, Newline has changed the locks, conducted an inspection, obtained insurance and has begun to make limited repairs to the Real Estate to prevent further damages. As supported by the Status Report and the testimony at the TRO Hearing on April 25, 2019, the actions of the Debtors through their principal Dylan Reeves have decimated both Real Estate significantly through the intentional and malicious removal of fixtures of both Real Estate.

## Obtaining a Tax Deed

Newline, with the automatic stay modified in both cases, has begun the process of obtaining a Tax Deed for both Real Estate in the Circuit Court of Cook County. Newline does not expect a Tax Deed to be issued until July of 2019. Newline has referred the matter back to its counsel who is actively working to prepare an Application for Tax and Deed.

## Newline is requesting that the TROs be extended through July 2019 or made permanent

The reasons for the TRO Orders have not changed and as a result both TROs should be extended through July 2019 at the very least and/or made permanent. By this Brief, Newline is making a request for a Preliminary or Permanent Injunction. Based on the actions of the Debtors through Dylan Reeves Newline would request to prevent any unsupervised access to the Real Estate by Dylan Reeves.

Pursuant to the Order Entering a Temporary Restraining Order, Newline notified Debtor and Debtor's counsel of its intent to inspection the real estate with three business days' notice. See Exhibit A notice to Debtor and Debtor's counsel sent on April 25, 2019. On April 30, 2019 Newline completed that inspection and the extent of the damage to the real estate was more substantial than what had previously been known. See Exhibit B photos taken during the inspection on April 30, 2019

As stated in the Status Report, Dylan Reeves has already caused significant damage to the Real Estate, compromised the safety and security of the buildings, and caused Newline to expend funds to safeguard the assets. Pursuant to Federal Rule of Bankruptcy Procedure 7065 which incorporates Federal Rule of Civil Procedure 65 a Preliminary Injunction can only be issued upon Notice. By this Brief, such notice is served that Newline will making a request for a Preliminary Injunction through July 2019 at the hearing on May 8, 2019.

Judge Schmetterer in *In Re Stirneman*, 418 B.R. 726 (Bankr.N.D.Ill.2009) stated, "A court may issue a preliminary injunction only on notice to the adverse party. Fed.R.Civ.P. 65 (made applicable in bankruptcy by Rule 7065Fed. R. Bankr.P.), when deciding whether to grant a preliminary injunction, a court should consider four factors:

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.

*O'Connor v. Bd. of Ed. of Sch. Dist. No. 23,* 645 F.2d 578, 580 (7th Cir.1981) *(citing Reinders Bros. v. Rain Bird E. Sales Corp.,* 627 F.2d 44, 48 (7th Cir.1980)). "Preliminary relief is properly sought

only to avert irreparable harm to the moving party." *Chi. United Indus., Ltd. v. City of Chi.,* 445 F.3d 940, 944 (7th Cir.2006).''

Newline continues to meet these elements as determined by Judge Cassling in the TRO Hearings on April 25, 2019 as follows:

(1) Newline will be irreparably harmed if the TRO Order is not extended or a Preliminary Injunction entered as to Debtors and Dylan Reeves have shown a willingness to violate this court's orders and cause willful damage to the Real Estate. Preventing access will keep the status quo, prevent future damage which would be irreparable harm to Newline if allowed to occur; *Cook County Mobil Dealers' Ass'n v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 89316, *6-8, 2006 WL 3590080 stating, "If the subject matter is unique, then no amount of money damages will compensate for its loss. With this in mind, because real property is always considered unique, injury that consists of the loss of real property or of the opportunity to purchase real property will always constitute irreparable harm sufficient to support a preliminary injunction."

(2) The threatened injury to the Newline outweighs the threatened harm the injunction may inflict on the Debtors and Dylan Reeves as the Debtors and Dylan Reeves have already shown an inability to abide by the Plan and protect the Real Estate. As the Debtors have already removed substantial fixtures to the Real Estate and left it sitting unsecure there is little expectation that they did not abandon the Real Estate. When coupled with the evidence found in the inspection that the Debtors left rotting food sitting on the floor, water running over electrical lines, burst pipes, roof leaks, removal of the fire suppression system and removal of the security system the harm to Newline outweighs the restrict to the Debtors;

(3) Newline has at least a reasonable likelihood of success on the merits against the Debtors and Dylan Reeves to Enforce the Plan Confirmation and/or Contempt which can be demonstrated by the facts stated in the Status Report and the TRO Hearings regarding the damage caused to the Real Estate, and the violations to the requirements of the Plan by the Debtor and Dylan Reeves; and

(4) Whether the granting of a preliminary injunction will disserve the public interest is not at issue as the public interest is not at issue in this matter (finding of Judge Cassling[1]) but even if it was at issue parties adhering to Court Orders and not destroying and looting Real Estate serves the public interest by preserving the rule of law.

Based on the above elements, and the ongoing risk that Debtors and/or Dylan Reeves could take further actions to damage the Real Estate, Newline is entitled to extension of the TRO or the entry of a Preliminary Injunction on the same terms. Newline continues to only want to preserve the status quo until the entry and recording of the Tax Deed regarding the Real Estate.

**<u>Newline is requesting that the Court Enforce the Confirmation Order, find the Debtor and Dylan Reeves in Contempt, enter a Judgment for Damages (compensatory, attorney fees and punitive) and surcharge the $25,000 payments due under Section 2.7(m) of the Confirmed Plan</u>**

In addition to the relief sought in this request for a preliminary and/or permanent injunction, Newline intends to file a Motion in Both Bankruptcy Cases to Enforce the Confirmation Hearing and find the Debtors and Dylan Reeves in contempt for their violations of the Confirmed Plan and request that the

---

[1] Judge Cassling found that the issue was between two parties the Debtor and Newline as such there was no harm to the public interest in granting the TRO.

Court enter a Judgment for damages (compensatory, attorney fees and punitive) and surcharge (set off) the $25,000.00 payments due under Section 2.7(m) of the Confirmed Plan[2].

The Confirmed Plan in Section 2.7(j) provides, "A tenant must actively be doing business in the real estate and the Debtor must maintain any current security system and current cameras for the Real Estate, but does not have to install any security system or camera system. No personal property shall be removed from the real estate without notice to the Bankruptcy Court. No Fixtures shall be removed the real estate without approval of the Bankruptcy Court." The Court found during the TRO Hearings that the Debtor had specifically violated these provisions.

The Confirmed Plan in Section 2.7(n) provides, "The Debtor will maintain insurance for the real estate for an amount not less than the appraised value of the real estate with Newline as an additional insured party, along with the U.S. Trustee, and provide proof within 14 days to Newline upon request and upon receipt of any notice relating to any claim or coverage. Any destruction of the real estate that entitles the debtor to file a claim shall be filed within 30 days of the loss and any funds received shall be paid to Newline, and credited against any claim of Newline, until such time as its claim is paid;" The Debtors and Dylan Reeves has not complied with this provision nor the TRO Order which requires proof of insurance as of May 1, 2019.

Besides the stated defaults referred to above, a Debtor must proceed and act in good faith at all times. Intentionally damaging the Real Estate and ignoring the requirements of notice to the court and Newline is in fact the opposite of good faith. Dylan Reeves and the Debtors since Confirmation of the Plan in both cases have engaged in a course of conduct that demonstrates bad faith. These actions include knowingly making false allegations against former counsel, Newline and its counsel and

---

[2] The Order requiring the filing of this Brief requires "a brief in support of any further relief requested." The discussion below complies with that requirement.

intentionally damaging the Real Estate when the automatic stay was confirmed by the Court to no longer be in effect. There is no possible excuse for these actions by Dylan Reeves and the Debtors should be sanctioned for this behavior.

Newline asserts that this Court has the jurisdiction to consider hearing a plan enforcement proceeding until it is concluded. This is a result of the fact that the Plan Enforcement action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested in the Plan Enforcement Action are sections 105(a), 524(a), 553, 1141 and 1142 of title 11 of the United States Code (the "Bankruptcy Code").

A confirmed plan of reorganization has the legal power of a court-imposed contract on all parties that it affects, and it binds such parties. *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000). Bankruptcy Courts have the inherent power to enforce their own orders, including confirmation orders. *See* FED. R. BANKR. P. 3020(d); *In re Morrow*, 495 B.R. 378, 382 (Bankr. N.D. Ill. 2013) (Barnes, J.). This Court's authority to enforce the Confirmation Order is also specifically provided for by the Bankruptcy Code. *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of a plan."); *Id.* § 105(a) ("The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). A party with full advance notice of a confirmation proceeding and a full opportunity to participate in such proceeding cannot attack a confirmed plan. *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993); *Harvey*, 213 F.3d at 321.

Section 105 of the Bankruptcy Code confers both statutory and inherent authority on bankruptcy courts to impose sanctions in defense of the policy and principles underlying the Bankruptcy Code. In re Dental Profile, Inc., 446 B.R. 885, 906 (Bankr. N.D. Ill. 2011). These powers include the ability "to

7

punish a party that fails to comply with the terms of their orders, and to coerce compliance with such orders." In re Castle Home Builders, Inc., 520 B.R. 98, 106 (Bankr. N.D. Ill. 2014).

Where, as here, a debtor violates a Plan injunction, bankruptcy courts routinely enter orders necessary to remedy the violation. These remedies include requiring the party to pay actual damages are often awarded to the aggrieved party, including attorneys' fees and costs necessitated by the violation. *See In re Castle Home Builders*, 520 B.R. at 106–09 (granting reorganized debtors' motion to enforce chapter 11 confirmation order and granting sanctions, including $100,000 in actual damages for attorneys' fees and other costs); *In re Nat'l Heritage Found.*, No. 09-10525, 2013 Bankr. LEXIS 2516 (Bankr. E.D. Va. June 21, 2013) (creditor found to have violated plan injunction by pursuing litigation for discharged debts held in contempt, ordered to dismiss litigation and pay nearly $300,000 in attorneys' fees and expenses).

What is described above is the factual and legal basis for a Motion to Enforce.

Respectfully Submitted,
Newline Holdings LLC

BY:/s/Paul M. Bach

Paul M. Bach
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
847 564 0808