UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| **JUDGE** | Janet S. Baer | **Case No.** | 18 B 12463 |
|---|---|---|---|
| **DATE** | November 16, 2020 | **Adversary No.** | |
| **CASE TITLE** | In re 5431-33 S. Wabash LLC | | |
| **TITLE OF ORDER** | Order Denying Newline Holdings LLC's Motion to Convert Chapter 11 Case to Chapter 7 Case (18 B 12476, ECF No. 304); Granting U.S. Trustee's Motions to Dismiss Chapter 11 Cases (18 B 12463, ECF No. 248; 18 B 12476, ECF No. 224); Granting in Part and Denying in Part Debtors' Motions to Dismiss Bankruptcy Cases and Terminate All Pending Motions (18 B 12463, ECF No. 327; 18 B 12476, ECF No. 308; 19 A 00607, ECF No. 64; 19 A 00608, ECF No. 61); and Denying Debtor's Motion to Confirm Termination or Absence of Stay (18 B 12476, ECF No. 336) | | |

**DOCKET ENTRY TEXT**

Creditor Newline Holdings LLC's motion to convert the 5437 S. Wabash LLC bankruptcy case from chapter 11 to chapter 7 is denied; the U.S. Trustee's motions to dismiss the bankruptcy cases of 5431-33 S. Wabash LLC and 5437 S. Wabash LLC (the "Debtors") are granted; the Debtors' motions to dismiss both bankruptcy cases and the two adversary proceedings filed by Newline Holdings LLC against the Debtors and their principal Dylan Reeves, as well as to transfer all pending motions filed by Newline against the Debtors to state court, are granted in part and denied in part; and 5437 S. Wabash LLC's motion to confirm the termination or absence of the automatic stay is denied. The bankruptcy cases are dismissed with prejudice. The adversary proceedings are dismissed without prejudice, and Newline Holdings LLC may refile them in state court if it chooses to do so.
 **[For further details see text below.]**

## STATEMENT

    These matters are before the Court for ruling on motions to dismiss or convert the bankruptcy cases of 5431-33 S. Wabash LLC and 5437 S. Wabash LLC (the "Debtors") pursuant to 11 U.S.C. § 1112(b).[1] Both the United States Trustee and the Debtors seek dismissal of the cases pursuant to that statutory provision. The Debtors, however, also request dismissal of the adversary proceedings filed by creditor Newline Holdings LLC ("Newline") against the Debtors and their principal Dylan Reeves for injunctive relief and damages based on allegations of defamation, as well as transfer of all pending motions filed by Newline against the Debtors to state

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure, respectively.

1

court. Newline, on the other hand, seeks conversion of the 5437 S. Wabash LLC bankruptcy case (the "5437 Case") from chapter 11 to chapter 7. Finally, 5437 S. Wabash LLC (the "5437 Debtor") seeks a "comfort order" pursuant to § 362(j), confirming that the automatic stay was previously terminated after Newline was unable to get a tax deed on that Debtor's property in state court.

For the reasons set forth below, the Court finds that: (1) there is "cause" to convert or dismiss the Debtors' bankruptcy cases under § 1112(b); (2) dismissal of the bankruptcy cases is in the best interests of creditors and the estate; (3) there is no independent basis for federal bankruptcy court jurisdiction over Newline's two adversary proceedings; and (4) a "comfort order" confirming that the automatic stay has been terminated as to Newline is unnecessary. As such, Newline's motion to convert the 5437 Case is denied; the U.S. Trustee's motions to dismiss the bankruptcy cases are granted; the Debtors' motions to dismiss the bankruptcy cases and the two adversary proceedings and to transfer all pending motions filed by Newline against the Debtors to state court are granted in part and denied in part; and the 5437 Debtor's motion to confirm the termination or absence of the automatic stay is denied.

## **JURISDICTION**

Before turning to the parties' arguments on dismissal or conversion under § 1112(b), the Court addresses the suggestion of both the 5437 Debtor and the U.S. Trustee that the Court lacks jurisdiction to convert the 5437 Case pursuant to the *Rooker-Feldman* doctrine. Specifically, in response to Newline's request for conversion, the 5437 Debtor and the U.S. Trustee argue that the *Rooker-Feldman* doctrine precludes the Court from reviewing, overturning, modifying, or otherwise rejecting the state court's order against Newline with respect to its pursuit of a tax deed on the property of the 5437 Debtor.[2] That doctrine prevents "lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the [federal] court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (internal quotations omitted).

The 5437 Debtor and the U.S. Trustee's argument is irrelevant here. The Court is not being called upon to review the state court order and need not overturn, modify, or reject it in order to decide the motions of the parties. *See Zurich Am. Ins. Co. v. Superior Ct. of Cal.*, 326 F.3d 816, 823 (7th Cir. 2003) (explaining that the key question in every *Rooker-Feldman* analysis is whether the federal court "is in essence being called upon to review the state-court [decision]" (internal quotations omitted)); *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003) (noting that if "success in the federal court would require overturning the state court decision," then the federal court lacks jurisdiction over the claim). Indeed, neither dismissal of the 5437 Case nor its conversion from chapter 11 to chapter 7 would result in the issuance of a tax deed to the property of the 5437 Debtor to Newline.

---

[2] The U.S. Trustee argues that "allowing the parties to relitigate the tax deed application would likely violate the *Rooker-Feldman* doctrine." (Bankr. No. 18-12476, Dkt. No. 319 at 9.) The 5437 Debtor contends that, having failed to obtain a tax deed for the property at 5437 S. Wabash in state court, Newline cannot now ask this Court to liquidate that property. (*Id.*, Dkt. 334 at 4–5.)

2

Accordingly, the Court has jurisdiction to address the issues and determine the interests of the parties in these matters. That jurisdiction is conferred by 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The matters are core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (E), and (O).[3]

## BACKGROUND

The facts in these matters are gleaned from the parties' papers, materials on the dockets of both bankruptcy cases, and materials on the dockets of Newline's defamation adversary proceedings against the Debtors and Dylan Reeves. None of the parties has requested a formal evidentiary hearing, and all of the relevant facts are before the Court. Thus, no evidentiary hearing is needed. *In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009).

On the petition date, the Debtors owned the real properties located at 5431-33 S. Wabash Avenue (the "5431-33 Property") and 5437 S. Wabash Avenue (the "5437 Property"), both in Chicago, Illinois (together, the "Properties"). Prior to their bankruptcy filings, the Debtors failed to pay the property taxes for the Properties for tax years 2013, 2014, and 2015.[4] On July 18, 2017, Newline purchased the delinquent taxes at a tax sale and received certificates of purchase memorializing the sales. The amounts of the tax sales were $94,046.26 for the 5431-33 Property and $71,129.36 for the 5437 Property, both of which included statutory interest and fees. The deadline to redeem the tax sales was April 27, 2018.[5] Neither the Debtors nor any other party timely exercised their right to redeem the taxes.

Instead, on April 27, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. According to the statements of financial affairs filed in the cases, the Debtors had no income in 2016, 2017, and 2018, and their operating reports for May 2018 to December 2018 reflected no income or expenses. On November 9, 2018, the Debtors filed their Second Amended Disclosure Statements and Second Modified Chapter 11 Plans (the "Plans").[6] Newline participated in the reorganization process during the pendency of the bankruptcy cases, was involved in the negotiation and drafting of the Plans, and voted in favor of the Plans. On December 12, 2018, the Court confirmed the Plans.

The Plans provided for payment of administrative expenses, priority claims, and secured claims in full, as well as for "claims of unsecured creditors of 100% of the allowed amounts of their claims or any non-disputed unsecured claim scheduled with 5% interest." (Bankr. No.

---

[3] Further discussion of the Court's jurisdiction in connection with Newline's adversary proceedings against the Debtors and Reeves appears below in the section of this ruling addressing the dismissal of those adversaries.

[4] 5431-33 S. Wabash LLC also failed to pay the first and second installment of property taxes for tax year 2016 and the first installment for tax year 2017. The Cook County Treasurer filed a proof of claim for the 2016 and 2017 taxes in that Debtor's bankruptcy case, which also includes property taxes for 2012.

[5] To redeem the tax sales, any party with an interest in the Properties could have paid the tax sale amounts for 2013, 2014, and 2015, plus interest, as well as the 2016 and 2017 taxes for the 5431-33 Property that were paid by Newline, plus interest and various costs and fees, at any time until the redemption deadline.

[6] Substantively, the Plans are identical.

18-12463, Dkt. 131 at 3 ¶ 13; Bankr. No. 18-12476, Dkt. 133 at 3 ¶ 13.[7]) There were seven classes of claims established under the Plans, as well as two categories of unclassified claims for administrative expenses and priority taxes. (Plans, Article 1, Designation of Classes of Claims & Interests, and Article 2, Treatment of Claims.) Class 3-A, the only impaired class, consisted of Newline's secured tax lien claim.[8] (Plans, Article 2, Treatment of Claims ¶ 2.7.)

The funds to implement the Plans were to be derived from the Debtors' liquidation of the Properties, and all payments were to be made upon the closing of the sale or refinance of one or both of those Properties. (Plans, Brief Summary ¶ 13; Article 4, Execution of the Plan ¶ 4.1.) As to the sale or refinance of the Properties, the Plans provided that the Debtors would, in good faith, attempt to sell or refinance the Properties through a disinterested real estate broker or salesperson and close on the Properties by March 31, 2019 (the "Closing Deadline"). (Plans, Article 2, Treatment of Claims ¶ 2.7(a).) The deadline to close could not be extended without Newline's written consent. (*Id.*) If the Debtors failed to sell or refinance the Properties by the Closing Deadline, Article 2.7(m) of the Plans provided for the modification of the automatic stay to permit Newline to file applications for tax deed in state court:

> In the event that the Bankruptcy is dismissed prior to the Closing Date, or Debtor does not close on any refinance or the Sale of the Real Estate by the Closing Date, then the automatic stay and any other injunction imposed by this Modified Chapter 11 Plan shall be lifted or other[wise] modified to allow Newline to proceed pursuant to non-bankruptcy law to obtain a Deed. In this event, Newline will pay: (1) all unsecured creditors in full with interest[], as stated in this Plan and not to exceed the amount stated in this Plan, within 7 business days of the closing date, and (2) to the Debtor, an additional $25,000 upon recordation of the Deed and possession of the real estate as consideration (which the Debtor agrees is sufficient) for any fraudulent transaction or other proceeding which may be brought by the Debtor or anyone associated with the Debtor or any Trustee under the bankruptcy Code, to the extent the Debtor has authority to prevent any Trustee or third party from doing so[].

(Plans, Article 2, Treatment of Claims ¶ 2.7(m).)

On March 28, 2019, Newline filed Notices of Default of the confirmed Plans. According to those Notices, the Debtors had failed to list the Properties with a real estate broker or salesperson, failed to provide Newline with monthly reports reflecting offers and showings, and failed to act in good faith to sell or refinance the Properties. Newline filed second and third Notices of Default on March 29, 2019 and April 1, 2019, respectively.

After the Debtors failed to cure the default, Newline filed Notices of Modification of the Automatic Stay and Plan Injunction on April 12, 2019, second notices on April 15, 2019, and third

---

[7] Hereafter, all citations to the confirmed plans are to "Plans."

[8] Class 2-A, containing the only other secured claim, consisted of the City of Chicago Department of Finance's statutory lien claim of $180.10 for unpaid water and sewer service. (Plan, Article 2, Treatment of Claims ¶ 2.6.)

4

notices on April 16, 2019. On April 17, 2019, the Court entered an order in each case: (1) confirming that the automatic stay did not exist against Newline and that no stay was in effect as to the Properties, and (2) allowing Newline to take any actions pursuant to non-bankruptcy law to obtain tax deeds to and possession of the Properties.

On April 23, 2019, Newline learned that the Debtors, through their principal Dylan Reeves, had abandoned and intentionally caused damage to the Properties and had removed both personal property and fixtures from the Properties without permission from or consent of the Court. In response, Newline filed emergency motions the following day to compel the Debtors to turn over possession of the Properties.[9] On April 25, 2019, a temporary restraining order ("TRO") was entered in each case, giving Newline access to the Properties to protect the value of the collateral.[10] Pursuant to the TROs, Newline was permitted to change the locks to and access points of the Properties, to conduct an inspection, and to obtain insurance for the Properties. The TROs were effective through May 9, 2019, and a continued hearing was set for May 8, 2019. On May 3, 2019, Newline filed a status report, as well a brief requesting that the Court: (1) either extend the TROs through July 2019 or make them permanent, and (2) enforce the confirmation order, find the Debtors and Reeves in contempt, enter a judgment for damages (compensatory, attorney fees, and punitive), and surcharge the $25,000 payments due under Article 2.7(m) of the Plans. On May 8, 2019, the Court found that Reeves had violated court orders and caused willful damage to the Properties. Accordingly, the Court extended the restrictions of the TROs, noting that it was "in the best interest of both the estate and the public to grant a permanent injunction," and asked Newline to submit draft orders to that effect. No draft orders were submitted by Newline, however, and, thus, an order granting a permanent injunction was never entered. (*See* Bankr. No. 18-12463, Dkt. 313; Bankr. No. 18-12476, Dkt. 291.)

On May 7, 2019, Newline filed applications for tax deeds to the Properties in state court. Thereafter, the Debtors filed compliance objections on June 17, 2019. On September 11, 2019, Newline filed motions for judgment on the pleadings, which were subsequently briefed by the parties. On February 26, 2020, the state court heard oral argument and made some preliminary rulings on the record.

In the meantime, on June 25, 2019, the U.S. Trustee had filed the instant motions to dismiss the bankruptcy cases pursuant to § 1112(b). Those motions and other matters were continued several times to allow the state court to adjudicate the Debtors' objections to Newline's applications for tax deeds to the Properties and Newline's motions for judgment on the pleadings.

---

[9] Pursuant to Newline's motions, exterior signage, a ventilation system, fixtures, personal property, awnings, chairs, tables, and other furniture had all been removed, causing substantial damage to the Properties. (Bankr. No. 18-12563, Dkt. 178 ¶¶ 10 & 11; Bankr. No. 18-12476; Dkt. 168 ¶ 10 & 11.) A subsequent inspection revealed that, among other things, three kitchen areas had been destroyed; a heating system had been damaged; a fire suppression system, large walk-in coolers, a soda system, a majority of the light fixtures, a granite countertop, and commercial washers and dryers had been removed; and portions of the water lines had been removed or damaged. (Bankr. No. 18-12563, Dkt. 195 ¶ 5; Bankr. No. 18-12576; Dkt. 179 ¶ 5.)

[10] At the hearing on April 25, 2019, the Court explained that it was treating Newline's motions to compel as requests for TROs because the motions were filed on short notice and injunctive relief was being sought.

On April 6, 2020, the state court issued two orders, overruling the Debtors' objection with respect to the 5431-33 Property and sustaining the objection with respect to the 5437 Property and, correspondingly, granting in part and denying in part Newline's motion for judgment on the pleadings. In reaching its decisions, the state court scrutinized the language in the chapter 11 Plans, explaining that that language "set forth a remedy to which all parties agreed: [the Debtors] would attempt to sell the [Properties] at issue. If a buyer was not forthcoming by a date certain, Newline was authorized to request relief from the automatic stay and '*proceed pursuant to non-bankruptcy law to obtain a Deed.*'" (Bankr. No. 18-12463, Dkt. 327, Ex. 1 at 2; Bankr. No. 18-12476, Dkt. 308, Ex. 1 at 2 .) Newline failed to file either a motion to reconsider the state court's order as to the 5437 Property or a timely appeal of that order.

On July 9, 2020, Newline filed the instant motion to convert the 5437 Case to a case under chapter 7. The same day, the Debtors filed motions to dismiss both bankruptcy cases with prejudice, to dismiss without prejudice the adversary proceedings filed by Newline against the Debtors and Dylan Reeves for injunctive relief and damages based on allegations of defamation, and to "terminate" or "remand" to state court all pending motions filed by Newline against the Debtors.

Finally, on August 26, 2020, the 5437 Debtor filed a motion seeking: (1) a "comfort order" under § 362(j) confirming that the automatic stay had been previously terminated, and (2) an order vacating as moot the TROs that had been entered on April 25, 2019. According to the motion, Newline no longer has an ownership interest in the 5437 Property and the 5437 Debtor is entitled to possession of that Property.

The motions to dismiss or convert and the 5437 Debtor's motion for a "comfort order" have now been fully briefed. Having reviewed all of the relevant documents, exhibits, and arguments, as well as the applicable case law, the Court is now ready to rule.

## DISCUSSION

### A. Motions to Dismiss or Convert Pursuant to § 1112(b)

Section 1112(b)(1) provides, in relevant part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under . . . chapter [11] to a case under chapter 7 or dismiss a case under . . . chapter [11], whichever is in the best interests of creditors and the estate, for cause[.]" 11 U.S.C. § 1112(b)(1). Enumerated grounds for "cause" are provided in § 1112(b)(4), but that list is not exhaustive, and courts may find "cause" for other equitable reasons. *In re Attack Props., LLC*, 478 B.R. 337, 344 (N.D. Ill. 2012). On a finding of cause, the court is required to convert or dismiss the chapter 11 case, absent "unusual circumstances," 11 U.S.C. § 1112(b)(2), but has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate, *Bartle*, 560 F.3d at 730; *In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018).

Here, there is no dispute that "cause" exists to convert or dismiss these bankruptcy cases.[11] The parties disagree, however, on two primary issues: (1) whether conversion to chapter 7 can or should occur after a chapter 11 plan has been confirmed, and (2) whether dismissal or conversion is in the best interests of creditors and the estate in the Debtors' cases.

### 1. Whether Post-Confirmation Conversion from Chapter 11 to Chapter 7 Is Possible in These Bankruptcy Cases

In support of their motions to dismiss, and in opposition to Newline's motion to convert, the Debtors and the U.S. Trustee contend that, pursuant to both case law and § 1141(b) of the Code, confirmation of the Plans vested all property of the estates in the reorganized Debtors and that, thus, there are no assets in the estates for a trustee to administer in a chapter 7 case. Accordingly, the parties argue, conversion to chapter 7 would be futile and provide no benefit to creditors. In contrast, Newline argues that conversion is available post-confirmation, that such conversion will resolve Newline's claim through a timely liquidation of the 5437 Property, and that case law dictates that property existing in the estate at confirmation becomes property of the chapter 7 estate upon conversion.

The effect of confirmation of a chapter 11 plan is determined by § 1141, which provides, in relevant part, that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1141(b). Despite this unambiguous language, courts addressing the effect of a subsequent conversion of a post-confirmation chapter 11 case to a case under chapter 7 have reached different results.[12]

One line of authority—on which the Debtors and the U.S. Trustee rely—holds that, upon confirmation of a chapter 11 plan, all estate assets vest in the reorganized debtor pursuant to § 1141(b), and conversion will not revest those assets in a chapter 7 bankruptcy estate. *In re T.S.P. Indus., Inc.*, 117 B.R. 375, 377–79 (Bankr. N.D. Ill. 1990).[13] *See also In re Sundale, Ltd.*, 471

---

[11] No one contests that "cause" exists for conversion or dismissal under § 1112(b), because the Debtors materially defaulted with respect to the confirmed Plans by failing to sell or refinance the Properties and, as a result, failing to make the payments contemplated by the Plans. *See* 11 U.S.C. § 1112(b)(4)(N). Newline asserts that there is also "cause" to convert the 5437 Case, because there is substantial or continuing loss to or diminution of the estate and no reasonable likelihood that the 5437 Debtor will reorganize or rehabilitate, the 5437 Debtor has grossly mismanaged the estate, and its failure to maintain appropriate insurance poses a risk to the estate or to the public. *See* 11 U.S.C. §§ 1112(b)(4)(A)–(C). Although the U.S. Trustee additionally asserts that "cause" exists because of the Debtors' inability to substantially consummate the Plans, *see* 11 U.S.C. § 1112(b)(4)(M), counsel for Newline stated on the record at a hearing on May 8, 2019 that all general unsecured creditors have been paid in full.

[12] The Seventh Circuit has not yet addressed the issue.

[13] In *T.S.P.*, the U.S. Trustee sought conversion of a post-confirmation chapter 11 case in order to investigate whether there were any estate assets that could be liquidated. 117 B.R. at 375. The bankruptcy court held that dismissal, rather than conversion, was in the best interest of creditors because, "upon confirmation, the Debtor became owner of all property formerly in its bankruptcy estate," and, thus, a chapter 7 trustee would have no assets to distribute to creditors. *Id.* at 375–76. Discussing the effects of confirmation, the *T.S.P.* court explained that "[o]nce a plan has been confirmed, in the absence of any contrary provisions in [the] plan," property vests in the debtor, "along with normal ownership rights." *Id.* at 377 (internal quotations omitted). "The debtor is then no longer a debtor in possession," the court said, "the bankruptcy estate ceases to exist unless the plan provides otherwise," and the automatic stay is terminated. *Id.* As for conversion, the court explained that after property "has vested in the Debtor,

7

B.R. 300, 306 (Bankr. S.D. Fla. 2012) (holding that, "in the absence of an express provision in the plan or confirmation order to the contrary, upon conversion, assets that vested in the reorganized debtor upon substantial consummation of a confirmed chapter 11 plan do not revest in the estate to be administered by the chapter 7 trustee"); *In re K & M Printing, Inc.*, 210 B.R. 583, 584–85 (Bankr. D. Ariz. 1997) (finding the conclusion reached by the *T.S.P.* court to be "better reasoned"); *Carter v. Peoples Bank & Tr. Co. (In re BNW, Inc.)*, 201 B.R. 838, 849 (Bankr. S.D. Ala. 1996); *In re Winom Tool & Die, Inc.*, 173 B.R. 613, 621 (Bankr. E.D. Mich. 1994); *In re T.S. Note Co. TFC Int'l*, 140 B.R. 812, 813–14 (Bankr. D. Kan. 1992); *Ohio Dep't of Taxation v. H.R.P. Auto Ctr. Inc. (In re H.R.P. Auto Ctr., Inc.)*, 130 B.R. 247, 256–57 (Bankr. N.D. Ohio 1991).

A second line of authority—on which Newline relies—holds that, although § 1141(b) vests property of a chapter 11 estate in the debtor upon confirmation, the interplay of other provisions of the Bankruptcy Code effectively revests that property in the estate once a chapter 11 case is converted to chapter 7. *In re Calania Corp.*, 188 B.R. 41, 43 (Bankr. M.D. Fla. 1995).[14] *See also Smith v. John Peter Lee, Ltd. (In re Smith)*, 201 B.R. 267, 274 (D. Nev. 1996), *aff'd*, 141 F.3d 1179 (9th Cir. 1998);[15] *Bezner v. United Jersey Bank (In re Midway, Inc.)*, 166 B.R. 585, 590 (Bankr. D.N.J. 1994).

---

conversion will not revest that property in the estate." *Id.* at 377–78. According to the court, conversion provides no benefit to creditors without property in the estate, and, for whatever property that might remain, a chapter 7 trustee would be "rather toothless" against competing creditors without the protection of the automatic stay. *Id.* at 378–79.

Additionally, the court found that §§ 1141(b) and 1112 do not conflict, because there are circumstances under which conversion of a post-confirmation chapter 11 case is both possible and in the best interest of creditors. *Id.* at 379. Importantly, the court said, the plain language of § 1141(b) expressly provides that confirmation of a plan vests all estate property in the debtor, "*[e]xcept as otherwise provided in the plan*," 11 U.S.C. § 1141(b) (emphasis added); thus, conversion is appropriate if a plan provides for both "conversion and the retention of jurisdiction over the property in the event of default." *T.S.P.*, 117 B.R. at 379; *see also In re Cherry*, 963 F.3d 717, 720 (7th Cir. 2020) (considering analogous § 1327(b) and finding that a "bankruptcy court may confirm a plan that holds property in the estate" only if "good case-specific reasons" are provided for that action). The court also noted that conversion might be in the best interest of creditors "when there is a preference or a fraudulent conveyance that occurred before the commencement of the chapter 11 proceeding and the debtor currently has no significant assets. In that situation the power to avoid the questionable transaction would be lost if the case were dismissed." *T.S.P.*, 117 B.R. at 379.

[14] In *Calania*, the issue before the court was whether the debtor's post-confirmation mail was property of the chapter 7 estate after the chapter 11 case had been converted for failure to make plan payments. 188 B.R. at 41. To address that issue, the court examined the interplay of §§ 348, 541, 1141, and 1112(b) of the Bankruptcy Code. Section 541 defines "property of the estate," in relevant part, as "all legal or equitable interests *of the debtor* in property *as of the commencement of the case*." 11 U.S.C. § 541(a) (emphasis added). Section 348, in turn, provides that "[c]onversion of a case . . . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). Reading the provisions together, the court said, "the conversion of a case does not affect the scope of the property of the estate in the converted case, since that property had been fixed as of the date of the original filing." *Calania*, 188 B.R. at 42–43. Noting that "it would be utterly pointless to make a provision for the conversion of an aborted Chapter 11 case to a Chapter 7 case if by virtue of Section 1141 there would not be any assets for the Chapter 7 trustee to administer," the court explained that a careful reading of the Code allows for only one conclusion: "that properties which were subject to the confirmed plan[—]that is[,] properties in which the Debtor had a cognizable legal or equitable ownership interest on the date of confirmation[—]will be properties of the estate in a Chapter 7 case, but properties which are clearly acquired by the Debtor post-confirmation will not be subject to administration by the Chapter 7 trustee." *Id.* at 43.

[15] The *Smith* court found the reasoning in *Calania* persuasive. In *Smith,* the district court held that the bankruptcy court had properly converted a debtor's post-confirmation chapter 11 case to chapter 7, because the debtor

8

Declining to embrace either line of authority, some courts look to the language and purpose of the confirmed plan and/or the circumstances at issue to decide whether property that would have vested in the debtor upon confirmation becomes property of the chapter 7 case upon conversion. *See, e.g., Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 807 (9th Cir. 2001) (finding that, although the plan "did not specifically provide that remaining assets would revert [to] the estate" on conversion, the plan "contain[ed] explicit provisions regarding the distribution of liquidation proceeds" to creditors and gave "the bankruptcy court broad powers to oversee implementation of the plan"); *Hagan v. Hughes (In re Hughes)*, 279 B.R. 826, 831 (Bankr. S.D. Ill. 2002) (concluding that the failure of the corporate reorganizations "divested the individual debtor's plan of its essence," making implementation impossible, and prevented the court from finding that plan confirmation vested estate property in the debtor individually, and expressly noting that the court's ruling "was limited to the facts before it and d[id] not constitute a *per se* rule regarding the effect of § 1141(b) upon conversion of a Chapter 11 case to Chapter 7 following confirmation"); *In re D & D Furniture, Inc.*, 239 B.R. 54, 59 (Bankr. E.D. Pa. 1999) (basing its decision on the facts of the case instead of adopting either of the two conflicting lines of authority).

Although they rely on one or the other line of authority to bolster their arguments, the parties on both sides of the conversion-or-dismissal dispute here acknowledge that resolution of the issue requires the Court to look to the language of the Plans to determine whether conversion will revest property in the bankruptcy estates. Each side contends that both the language and intent of the Plans support its position.

Newline claims that there is sufficient language in the Plans to provide the Court with authority to convert the 5437 Case, revest the 5437 Property in the estate, and order that Property to be liquidated. Newline also points to the intent and purpose of the Plans—to resolve debts through either the sale or refinance of the Properties—and explains that the Properties are both essential and integral to the execution of the Plans. In addition, Newline cites to the express language in the Plans that retains jurisdiction of the Court to, among other things, "recover all assets and properties of the Debtor[s] wherever located," "make such orders as are necessary or

---

had not complied with the provisions of the plan. 201 B.R. at 274–75. Relying primarily on *T.S.P.*, the debtor argued that all of the assets of his estate vested in him upon confirmation of the chapter 11 plan pursuant to § 1141(b) and that, thus, there was no bankruptcy estate to convert to chapter 7. *Id.* at 272–73. The district court rejected that argument, explaining that to hold otherwise would render provisions for converting confirmed plans under § 1112(b) meaningless and that all confirmed plans would be unenforceable because "there would be no bankruptcy estate over which a court would have jurisdiction." *Id.* at 273. Referring to the analysis in *Calania*, the court stated:

> The only interpretation of the interplay of sections 348, 541, 1141 and 1112(b) that is consistent with the plain language of 1112 is the interpretation of the *Calania* court. Section 348, which provides that the date of commencement of a plan does not change upon conversion simply means that property constituting the estate of the debtor is determined as of the date of commencement. When a plan is converted, this is the only property that the court has jurisdiction over. A court would not look at property acquired after confirmation in determining the estate for purposes of conversion to Chapter 7.

*Id.* at 274. The court further found that the plan at issue included language providing for the retention of the bankruptcy court's jurisdiction to supervise enforcement of the plan. *Id.* at 274. According to the court, that provision "encompassed conversion, and[,] as a result, conversion was a proper exercise of the bankruptcy court's discretion." *Id.*

9

appropriate to carry out the provisions of the Plan," "determine and resolve questions concerning the existence of defaults under the Plan," and "issue any [o]rder necessary to carry out the Plan." (Plans, Article 9, Retention of Jurisdiction ¶¶ 9.1(j), (l), (s), (v).) If the Properties leave the jurisdiction and oversight of the Court, Newline says, the Court will be unable to enforce the confirmed Plans.

The U.S. Trustee, on the other hand, argues that there is no provision in either the Plans or the confirmation orders concerning the vesting of estate property in the Debtors or the revesting of that property in the estates upon conversion. If Newline and the reorganized Debtors wanted the Properties to remain in the estates after confirmation, the U.S. Trustee contends, they had to provide in the Plans for the revesting of the Properties pursuant to § 1141(b). Absent such a provision, both the Debtors and the U.S. Trustee contend that the language of the Plans clearly provides that the state court will be the "battlefield" where the parties will "fight it out" if the Properties are not sold or refinanced. There is simply no provision in the Plans for conversion and the revesting of the Properties in the estates, they say, in the event that Newline fails to prevail on its applications for tax deeds in the state court.

After a careful review of the language and purpose of the Plans and consideration of the circumstances in these cases, the Court finds that it need not adopt either of the two conflicting lines of authority, nor make any determination at all as to whether the Properties would revest in the estates if the cases were converted. The Plans clearly specify that, in the event of default, the parties will resolve their disputes in state court and provides express procedures to be followed in order for the parties to be heard in that forum. The Debtors having defaulted under the Plans by failing to sell or refinance the Properties, and the parties having pursued their interests in state court pursuant to the Plans, the bankruptcy cases have run their course in this Court, and there is nothing left to be done here.

As Newline contends, the unambiguous language of the Plans clearly reflects that their purpose was to either sell or refinance the Debtors' Properties in order to repay their debts. (*See* Plans, Preamble ¶ 9 ("This Plan calls for distributions to the holders of allowed claims that will be derived from the [Debtors'] equity via a liquidation of [their] real estate interests via the sale or refinance of the commercial properties"); Brief Summary ¶ 13 ("The Debtor[s] will pay [these claims] . . . upon the closing of the sale or refinance of one or both of the real estate"); Article 4, Execution of the Plan ¶ 4.1 ("The [Debtors'] funds for implementation of this . . . Plan will be derived from the [Debtors'] liquidation of [their] real estate interests and the sale or refinance of the commercial propert[ies]").) While neither the Debtors nor the U.S. Trustee dispute the purpose of the Plans, the mechanism to achieve that purpose was expressly provided for in the Plans. Specifically, paragraph 2.7(m) of Article 2 provides that if the Debtors failed to sell or refinance the Properties by the Closing Deadline, the automatic stay and any other injunction imposed by the Plan would be modified to allow Newline to apply for tax deeds in the state court. (Plans, Article 2, Treatment of Claims ¶ 2.7(m).) The language in paragraph 11.2 of Article 11 reinforces that the forum for the parties to be heard in the event of default is the state court. (Plans, Article 11, Miscellaneous ¶ 11.2 (providing that the Debtors' "obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract *under state law*" (emphasis added)).)

Pursuant to the Plans, Newline was able to do exactly what it contracted for—file applications for tax deeds to the Properties in state court upon the Debtors' failure to sell or refinance those Properties. Although it ultimately failed to obtain a tax deed to the 5437 Property, Newline ardently exercised its state court rights and may not now "come running [back] to the bankruptcy judge" to obtain the Property through a chapter 7 liquidation. *See Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (explaining that once a plan of reorganization has been confirmed, the debtor, "[f]ormerly a ward of the court," is "without the protection of the bankruptcy court").

In short, the Plans provide express procedures for the parties to follow, in the case of default, in order to resolve their disputes in the state court, and, pursuant to those procedures, the parties exercised their rights in that forum under non-bankruptcy law. As such, no further action is required in this Court. Accordingly, the question of whether the Properties would revest in the estate upon conversion is not relevant to the issue at bar, and the Court need not make a determination as to that issue.

### 2. Whether Conversion or Dismissal Is in the Best Interests of Creditors and the Estate

The only remaining question for the Court to decide is whether conversion or dismissal is in the best interests of creditors and the estate. As previously discussed, a bankruptcy court's decision to convert or dismiss a case under § 1112(b) is discretionary in nature. *Northbrook Loans, LLC v. BlackAMG*, 555 B.R. 680, 682 (N.D. Ill. 2015). In making its convert-or-dismiss determination, the court must balance the equities and consider all of the circumstances of each case. *In re Jartran, Inc.*, 71 B.R. 938, 943 (Bankr. N.D. Ill. 1987), *aff'd*, 87 B.R. 525 (N.D. Ill. 1988), *aff'd*, 886 F.2d 859 (7th Cir. 1989).

To decide what will best serve the interests of creditors and the estate, courts typically consider a number of factors, including the following:

(1) whether a plan has been confirmed and any estate property remains to be administered;
(2) the ability of a chapter 7 trustee to reach assets for the benefit of creditors;
(3) whether "equality of distribution" would be better served by conversion rather than dismissal;
(4) whether there would be a loss of rights if the case were dismissed rather than converted;
(5) whether conversion or dismissal would maximize the estate's value as "an economic enterprise";
(6) whether remaining matters or issues would be more appropriately resolved outside of bankruptcy;
(7) whether the estate consists of a "single asset";
(8) whether the debtor has engaged in misconduct such that creditors need a chapter 7 trustee to protect their interests; and
(9) whether the appointment of a trustee is prudent or necessary to supervise the estate.

*In re Green Box NA Green Bay, LLC*, 579 B.R. 504, 511 (Bankr. E.D. Wis. 2017).

Most of the factors above favor dismissal of these bankruptcy cases. The only one that supports conversion is the prior misconduct of the Debtors' principal Dylan Reeves. Indeed, allowing a debtor who has engaged in the kind of unquestionably improper and egregious conduct that occurred in these cases to essentially "walk away" from the consequences of those actions could signal to others that such misconduct is "a risk-free alternative to obeying the rules." *See In re Capra*, 614 B.R. 291, 299 (Bankr. N.D. Ill. 2020).

Although Newline wants the Court to hold Reeves accountable for his actions by converting the 5437 Case to chapter 7 and liquidating the corresponding Property, the express provisions of the Plans provide otherwise. As discussed above, the confirmed Plans in these cases establish clear procedures for Newline and the Debtors to resolve their disputes in state court in the event of default. Because the Debtors failed to sell or refinance the Properties, thus defaulting under the Plans, and the parties pursued their interests in state court pursuant to the Plans, the bankruptcy cases have effectively concluded in this Court and should therefore be dismissed.

Newline submits that creditors are "'the best judges of what is in their own best interests'" and that "'the court should ordinarily accommodate their wishes.'" (Bankr. No. 18-12476, Dkt. 304 ¶ 18 (quoting *Aurora Memory Care,* 589 B.R. at 644).) However, Newline is the *only* remaining creditor in this case, and it is *not* the Court's job to resolve two-party disputes. Further, although Newline favors conversion, the U.S. Trustee urges dismissal. As the U.S. Trustee monitors cases and provides comments and insight on various facets of bankruptcy matters, the Court gives "a certain degree of deference" to its position. *See In re Westhampton Coachworks, Ltd.*, Nos. 09-73008-ast, 09-73009-ast, 2010 WL 5348422, at *7 (Bankr. E.D.N.Y. Dec. 21, 2010).

Newline suggests that it will be left without a remedy if the cases are dismissed rather than converted. Pursuant to the Plans, however, Newline has retained its lien and, thus, "retains all rights provided by such lien under applicable non-[b]ankruptcy law." (Plans, Article 2, Treatment of Claims, ¶ 2.7(d); Article 11, Miscellaneous ¶ 11.2.) Moreover, the Plans themselves provide that the breach of any promises thereunder will "create a basis for an action for breach of contract" in the state court. (Plans, Article 11, Miscellaneous ¶ 11.2.) Finally, although it failed to file either a motion to reconsider the state court's order as to the 5437 Property or a timely appeal of that order, Newline has a remaining remedy under state law—to obtain a sale in error. *See* 35 ILCS 200/22-50 (providing this specific statutory remedy for a party that is unable to obtain a tax deed after attempting but failing to comply with the statutory requirements).[16] *See also* 35 ILCS

---

[16] Section 22-50 provides as follows:

> If the court refuses to enter an order directing the county clerk to execute and deliver the tax deed, because of the failure of the purchaser to fulfill any of the above provisions, and if the purchaser . . . has made a bona fide attempt to comply with the statutory requirements for the issuance of the tax deed, then upon application of the owner of the certificate of purchase the court shall declare the sale to be a sale in error.

35 ILCS 200/22-50.

200/21-310 (setting forth the circumstances under which the court shall declare a sale to be a sale in error).

On balance, most of the factors applied to these cases weigh heavily in favor of dismissal over conversion, even given Reeves' wrongful and reprehensible conduct. With only a single asset in each of the cases and the overriding disagreement between Newline and the Debtors being in the nature of a two-party dispute, conversion of the 5437 Case, appointment of a chapter 7 trustee, and liquidation of the 5437 Property will advance the interest only of Newline, the sole creditor remaining in the case. Having been actively involved in both the negotiation and drafting of the Plans, Newline ultimately got what it bargained for—the ability to pursue tax deeds to the Properties in state court if the Debtors failed to sell or refinance them. Despite having failed to obtain a tax deed to the 5437 Property, Newline's lien survives confirmation, and it will not be without remedies if the cases are dismissed. For all of these reasons, the Court finds that dismissal is in the best interests of creditors and the estate, and the Debtors' bankruptcy cases are dismissed with prejudice.

### B. Debtors' Motions for Dismissal of Adversary Proceedings and Transfer of All Pending Motions Filed by Newline Against Debtors to State Court

The Debtors also seek dismissal of the adversary proceedings filed by Newline against the Debtors and Reeves for injunctive relief and damages based on allegations of defamation. The Debtors request that those adversaries be dismissed without prejudice, noting that they can be heard in state court if Newline chooses to refile them there. In addition, the Debtors seek transfer of all pending motions filed by Newline against the Debtors to state court.[17]

As to the defamation suits, the issue is whether and under what circumstances the Court may or must relinquish jurisdiction over the adversary proceedings which are based solely on state law when the underlying bankruptcy cases have been dismissed. The Debtors argue that the defamation suits are non-core proceedings that should be dismissed on jurisdictional grounds. Newline does not expressly disagree that the adversaries are non-core but contends that they are related to the bankruptcy cases and that, thus, the Court retains jurisdiction over them.

Bankruptcy courts have jurisdiction to hear matters that are not core proceedings but that are otherwise "related to a case" under the Bankruptcy Code. 28 U.S.C. § 157(c)(1). The bankruptcy court may hear such matters but not decide them without the consent of the parties. *Id.* §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." *Id.* § 157(c)(1).

A dispute is "related to" a bankruptcy case when "it affects the amount of property available for distribution or the allocation of property among creditors." *Elscint, Inc. v. First Wis.*

---

[17] The Debtors actually ask the Court to "remand" all of Newline's outstanding motions against them to state court. As the motions were at no time pending or heard in the state court forum, the Court treats the Debtors' request as a *transfer* of the pending motions to state court.

*Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987); *see Globaleyes Telecomms., Inc. v. Verizon North, Inc.*, 425 B.R. 481, 497 (S.D. Ill. 2010) (noting that non-core "related-to" jurisdiction "is only to be exercised when resolution of the dispute at hand will have a tangible effect on the bankruptcy estate or the property to be distributed to creditors"). *See also Citizens Bank & Tr. Co. v. Melrose Park Nat'l Bank (In re Crystal Mfg. & Packaging, Inc.)*, 60 B.R. 816, 818 (N.D. Ill. 1986) (explaining that courts "have uniformly held that, if an adversary proceeding does not involve property in which the bankrupt's estate asserts an interest, and the resolution of the claim will not affect the administration of the estate, then the bankruptcy court has no subject matter jurisdiction to adjudicate the claim").

With the dismissal of the underlying post-confirmation bankruptcy cases here, "the all-important bankruptcy estate[s] no longer exist[], so the limits of 'related to' jurisdiction are even more narrow and restrained." *Globaleyes*, 425 B.R. at 497; *see also Federalpha Steel LLC Creditors' Tr. v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 880 (Bankr. N.D. Ill. 2006) (noting that after confirmation of a chapter 11 plan, "related to" jurisdiction is "'sharply reduced'"). In fact, the Court's post-confirmation jurisdiction is limited to only those matters involving the execution, implementation, or interpretation of the Plan and disputes requiring application of bankruptcy law. *Globaleyes*, 425 B.R. at 497–98 (collecting cases and noting that "courts in the Seventh Circuit have consistently held that post-confirmation jurisdiction can be exercised by a bankruptcy court only to the extent necessary to interpret or implement the plan").

Newline's defamation suits are not matters involving the execution, implementation, or interpretation of the Plans. Rather, the adversaries are based on statements made by the Debtors and Reeves that allege a criminal conspiracy by Newline, its affiliates, one of the Debtors' former attorneys, and other unnamed parties from Florida. According to the complaints, the "unfounded, unsupported and false allegations," which were sent by Reeves to the Illinois Attorney Registration and Disciplinary Commission, threaten the reputation of Newline and its affiliates and, if published, "would likely result in a reduction in business opportunities." (Adv. No. 19-00607, Dkt. 4 at 2; Adv. No. 19-00608, Dkt. 1 at 2.) In addition to injunctive relief, Newline seeks to be compensated by the Debtors and Reeves for communicating the allegations to third parties and asks the Court to hold them in contempt and to punish them.

The defamation proceedings also do not involve disputes requiring application of bankruptcy law. Although the claims for injunctive relief and damages are made pursuant to § 105 of the Bankruptcy Code,[18] they are clearly grounded in state defamation law. Moreover, the dispute in the adversary proceedings affects neither the amount of property available for distribution nor the allocation of property among creditors. Thus, the Court finds that Newline's claims in the adversary proceedings are not "related to" the bankruptcy cases for purposes of establishing jurisdiction and that there exists no independent basis for federal bankruptcy court

---

[18] Although § 105(a) provides bankruptcy courts with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," 11 U.S.C. § 105(a), the "authority bestowed thereunder may be invoked only . . . to preserve an identifiable right conferred elsewhere" in the Code. *Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir. 2002) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

jurisdiction over the adversaries.[19] With the dismissal of the bankruptcy cases, the adversary proceedings, which are based exclusively on state law, are "like the cartoon character who remains momentarily suspended over a void, spinning his legs furiously, when the ground has been (quite literally) cut out from under him." *See Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995). "So tenuous is the federal link" that the Court relinquishes jurisdiction over the adversary claims because "no possible federal interest . . . would be served by retention." *See id.* at 81–82.

Accordingly, the Court grants the Debtors' request to dismiss the two defamation proceedings, those adversaries are dismissed without prejudice, and Newline may refile the suits in state court if it chooses to do so. As the Debtors have failed to provide sufficient information or argument as to "all pending motions" filed by Newline against the Debtors, their request that those motions be dismissed, otherwise "terminate[d]," or transferred to state court is denied.

### C. Debtor's Motion for a § 362(j) "Comfort Order"

Finally, the 5437 Debtor seeks a "comfort order" under § 362(j), confirming that the automatic stay was previously terminated. The Debtor also requests entry of an order vacating as moot the TROs that were entered on April 25, 2019. According to the motion, Newline no longer has an ownership interest in the 5437 Property and the 5437 Debtor is entitled to possession of that Property.

First, the status of the automatic stay has long been resolved. On April 17, 2019, after the Debtors failed to sell or refinance the Properties by the Closing Deadline, thereby defaulting under the Plans, the Court entered an order in each case confirming the absence or termination of the automatic stay, indicating that such stay "d[id] not exist as to Newline . . . and its successors and assigns" and that "no automatic stay or any other stay [was] in effect as to the Debtor[s]" and their Properties. (Bankr. No. 18-12463, Dkt. 177; Bankr. No. 18-12476, Dkt. 167.) Those orders also granted Newline "leave of court to act pursuant to non-bankruptcy law to obtain . . . tax deed[s] [to] and possession of [the Properties] or to take any other action pursuant to non-bankruptcy law to effectuate obtaining . . . tax deed[s] and possession." (*Id.*) That the automatic stay was previously modified as to Newline could not be any clearer. Therefore, the Court will not enter a "comfort order."

As to the 5437 Debtor's request for entry of an order vacating as moot the TROs that were entered in April 2019, those orders expired by their own terms on May 9, 2019. Although the Court indicated at a hearing on May 8, 2019 that it would extend the TROs by entering a permanent injunction, no draft order was ever submitted by Newline, no order was thus entered on the docket, and the TROs did not continue past May 9, 2019. Thus, no order vacating the TROs as moot is necessary.

The 5437 Debtor submits that the purpose of its motion is to establish that the 5437 Property belongs to the Debtor and that Newline has no right to continue to exercise dominion and control over it. This Court makes no determination or ruling as to the ownership of either of the

---

[19] In fact, Newline expressly states in its adversary complaints that the allegations made by the Debtors and Reeves "are in no way related to any relevant proceedings." (Adv. No. 19-00607, Dkt. 4 at 2 ¶ 4; Adv. No. 19-00608, Dkt. 1 at 2 ¶ 4.)

Properties; that decision is left for the state court to make. Because the Debtor's requests in this motion are either inappropriate or unnecessary, the motion is denied.

## CONCLUSION

For the foregoing reasons, the Court finds that there is "cause" to convert or dismiss the Debtors' bankruptcy cases under § 1112(b) of the Code and that dismissal is in the best interests of creditors and the estate. The Court further finds that there is no independent basis for federal bankruptcy court jurisdiction over Newline's two defamation suits. Finally, the Court finds that a "comfort order" confirming that the automatic stay has been terminated as to Newline and an order vacating the previously-entered TROs are unnecessary.

Accordingly, Newline's motion to convert the 5437 Case from chapter 11 to chapter 7 is denied; the U.S. Trustee's motions to dismiss the bankruptcy cases are granted; the Debtors' motions to dismiss the bankruptcy cases and the two adversary proceedings and to transfer all pending motions filed by Newline against the Debtors to state court are granted in part and denied in part; and the 5437 Debtor's motion to confirm the termination or absence of the automatic stay is denied. As such, the Debtors' bankruptcy cases are dismissed with prejudice. The two adversary proceedings are dismissed without prejudice, and Newline may refile them in state court if it chooses to do so.

**DATE:** November 16, 2020  **ENTERED**:

_____
Janet S. Baer
United States Bankruptcy Judge